**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MICHAEL COLLINS, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,

CASE NO:   2:22-cv-961

      PLAINTIFF,

      v.

UNIVERSAL PROTEIN SUPPLEMENTS CORPORATION d/b/a UNIVERSAL NUTRITION,

      Defendant.

## CLASS ACTION COMPLAINT

Plaintiff Michael Collins (hereinafter "Plaintiff," "Plaintiff Collins," and/or "Mr. Collins"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, brings this action against Universal Protein Supplements Corporation d/b/a Universal Nutrition (hereinafter "Defendant," "Universal Nutrition," and/or "Defendant Universal Nutrition"). Plaintiff alleges violations of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (73 P.S. §§ 201-1-201-9.2), and also brings claims for breach of express warranty, breach of implied warranty of merchantability, common law fraud, and unjust enrichment on behalf of all others similarly situated. The following allegations are based upon information and belief, including personal knowledge as to his own acts and experiences and upon the investigation conducted by counsel as to all other allegations:

## INTRODUCTION

1.    Plaintiff brings claims against Universal Nutrition as a class action and does so on behalf of himself and all putative members of the "Class" (defined below).

1

2.      This action arises from the deceptive trade practices of Defendant, acting under the brand names "Universal Nutrition" and "Universal Protein Supplements Corporation," in its manufacture and sale of nutritional powders containing branched-chain amino acids labeled: "Animal Juiced Aminos" (the "Product"), the packaging and advertisements for this product omits all caloric information and any mention of Calories. The "Animal Juiced Aminos" line of products is available for purchase in four flavor variations: Grape, Orange, Peach Mango, and Strawberry Limeade. The Product is marketed to "halt muscle breakdown and induce recovery." The Product is one sub-brand of the Universal Nutrition portfolio, which contains other similar products (*e.g.,* "BCAA Stack") all of which have similarly, purposely misbranded calorie content of "0 Calories," and omit caloric information entirely from the nutrition label. Despite Universal Nutrition's omission of Calories on its "Animal Juiced Amino's" supplement, independent laboratory testing has revealed that the product contains a range of 45-90 calories depending on formulation and use guidance, which can include multiple servings per day.

3.      Defendant's omissions regarding the number of Calories in the Product, including on its labels, webpages, and other marketing and advertising media and materials is purposely deceptive to create a competitive advantage against compliant competitors. However, it is the consumers that ultimately suffer by this deviant and non-compliant behavior because Defendants knowingly provide non-factual information and omit relevant information in an attempt to deceive and entice sales to these consumers who are seeking to purchase "0 Calorie" products conducive to weight loss and control alongside muscle development.

4.      Title 21 of the Code of Federal Regulations relating to nutritional labeling of food states that Calories are to be expressed to the nearest 5 Calories on labels. *See* 21 CFR 101.9(c)(1). The Food and Drug Administration ("FDA") guidance relating to nutritional labeling of food

describes several methods for estimating Calories in 21 CFR § 101.9(c)(1)(i). Of these methods, only five are relevant to the Product. These methods include (1) calories based on a per gram measurement of protein, fat, and carbohydrate of specific foods and other ingredients (this method is known as the Atwater Method); (2) calories calculated by assigning four and nine calories per gram for protein, total carbohydrate, and total fat, respectively; (3) calories calculated by assigning four, four, and nine calories per gram for protein, total carbohydrate, and total fat, respectively, but then subtracting two calories per gram for non-digestible carbohydrates and between zero and three calories per gram of sugar alcohols; (4) using data for specific food factors for particular foods or ingredients approved by the FDA; and (5) using bomb calorimetry data. *See* 21 CFR § 101.9(c)(1)(i).

5.      Furthermore, per the FDA, Calories are a "Third Group" nutrient, which means they are nutrients associated with health concerns. Accordingly, like saturated fat, cholesterol, sodium, and other Third Group nutrients, the actual Calorie level/serving must not exceed greater than 20% of the labeled claim. *See* 21 CFR 101.9(g)(5)).

6.      Plaintiff conducted independent Calorie calculation testing of the Products above.

7.      Plaintiff has analyzed the Products (referred to hereon jointly as "the Product") and evaluated them in accordance with each of the five methods provided by the FDA regulations and has concluded that every one of the five methods' results yield a calorie value that exceeds the claims on the Product's label by more than twenty percent (20%).

8.      The actual vs. labeled caloric content per product is as follows:

     a.      ANIMAL JUICED AMINOS contains 388 calories per 100 grams, and, assuming a serving size of 11.6 grams, contains approximately 45 calories per serving, despite not providing any labeled calories; and,

     b.      BCAA STACK contains 398 calories per 100 grams, and, assuming a serving size of 10 grams, contains approximately

3

> 39 calories per serving, despite not providing any labeled calories.

9.      Defendant's Product's representations are in direct violation of FDA guidance for labeling Calories when present at levels at or above 5 Calories/serving (*see* 21 CFR § 101.9(c)). The FDA requires marketers to declare Calories and Calorie-containing nutrients within the Nutrition Facts and Supplement Facts if they are determined to be in significant amounts. Moreover, in accordance with 21 CFR 101.60(a)(4), dietary supplements may only make nutrient content claims related to Calories when there are less than 5 Calories per labeled serving.

10.     The FDA provides a clear (high resolution) example of labeling Calories for an amino acid-based supplement via https://www.fda.gov/media/99158/download. This FDA example, as pictured below, displays approximately 4 grams of total amino acids, which would approximate 16 Calories and is listed as 15 based on rounding rules. The full FDA label set is included in **Appendix 1**. These labeling examples provided by the FDA remove any possibility of misunderstanding the guidance given as such guidance pertains to this Complaint. The relevant example provided by the FDA is as follows:

## Supplement Facts

Serving Size 1 Tablet
Servings Per Container 50

**Amount Per Tablet**

| | |
|---|---|
| Calories | 15 |
| Isoleucine (as L-isoleucine hydrochloride) | 450 mg* |
| Leucine (as L-leucine hydrochloride) | 620 mg* |
| Lysine (as L-lysine hydrochloride) | 500 mg* |
| Methionine (as L-methionine hydrochloride) | 350 mg* |
| Cystine (as L-cystine hydrochloride) | 200 mg* |
| Phenylalanine (as L-phenylalanine hydrochloride) | 220 mg* |
| Tyrosine (as L-tyrosine hydrochloride) | 900 mg* |
| Threonine (as L-threonine hydrochloride) | 300 mg* |
| Valine (as L-valine hydrochloride) | 650 mg* |

* Daily Value not established.

Other ingredients: Cellulose, lactose, and magnesium stearate.

11.     Nonetheless, Defendant continued to sell its Product with misleading labels, despite knowing the inaccuracy of such representations. Defendant chose, and continues to choose,

financial gain at the expense of consumers by concealing and omitting disclosure of this critical misrepresentation to consumers who, like Plaintiff, purchased the Product based specifically upon this "0 Calories" representation, for purposes of weight loss and control including to build muscle and burn fat.

12.     Plaintiff does not seek to impose requirements greater than those required by FDA regulations. Plaintiff's claims do not seek to expand upon, or call for stricter standards than, the labeling or marketing requirements of caloric content established by FDA regulations.

## JURISDICTION, VENUE, AND GOVERNING LAW

13.     This action is properly before this Court, and this Court has subject matter jurisdiction over this action under the Class Action Fairness Act. Specifically, at least one member of the proposed Class is a citizen of a different state from Universal Nutrition, the number of proposed Class members exceeds 100, and the aggregate amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs. *See* 28 U.S.C. § 1332(d)(2)(A).

14.     This Court has general and specific jurisdiction over the Defendant because Defendant Universal Nutrition has sufficient minimum contacts within the state of Pennsylvania to establish Defendant's presence in the state of Pennsylvania, and certain material acts upon which this suit is based occurred within the state of Pennsylvania. Universal Nutrition does substantial business in the state of Pennsylvania and within this District, and otherwise maintains requisite minimum contacts with the state of Pennsylvania. Specifically, Universal Nutrition distributed and sold the Product in the state of Pennsylvania.

15.     Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because Defendant is subject to personal jurisdiction within the state of Pennsylvania and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District,

including that Plaintiff purchased and used the Product in the state of Pennsylvania and in this District. Additionally, Universal Nutrition distributes the Product in this District, receives substantial compensation and profits from the sale and lease of Product in this District, and has and continues to conceal and make misrepresentations and material omissions in this District.

### PARTIES

**A. Plaintiff Michael Collins**

16.     Plaintiff Michael Collins is a citizen and resident of Pittsburgh, Pennsylvania in Allegheny County. Within the last three years, Plaintiff purchased the Product through Amazon's website after viewing pictures of its label and other marketing materials, all of which omitted any mention of Calorie content, leading him to believe that the Product contained 0 Calories. However, independent testing demonstrated that the Product contained substantially more Calories than Defendant advertised on the Product's label.

17.     At no point, either during Plaintiff Collin's research about the Product or at the point of sale, did Defendant ever disclose that the Product actually contained any Calories, therefore misleading consumers to believe it did not contain any calories

**B. Defendant**

18.     Plaintiff is informed and believes and, based upon information and belief alleges, that Defendant, Universal Nutrition, is a New Jersey corporation with its principal office located at 3 Terminal Road, New Brunswick, Middlesex County, New Jersey 08901 that makes and distributes health supplements and nutritional protein powders throughout the United States and, specifically, to consumers in numerous counties throughout the state of Pennsylvania.

19.     Defendant's Product is sold on its website and through retailers including Walmart, Amazon, The Vitamin Shoppe, and others, and is purchased by consumers for personal use and consumption in the state of Pennsylvania.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

### *THE SALE OF UNHEALTHY, CALORIE-LADEN PROTEIN POWDERS AS A DECEPTIVE TRADE PRACTICE*

20.     Each of the preceding paragraphs is incorporated by reference herein.

21.     Advertisements, packages, and labels should provide consumers with accurate information as to the nature and quality of a product's contents and should assist in making informed decisions. When a company misrepresents material information about a product, it is deceptive and misleading to reasonable consumers.

22.     On the websites where the Product is sold, including Defendant's own website, along with others like Walmart, Amazon, and The Vitamin Shoppe, Defendant prominently advertises details of the Product, but blatantly omits any mention of the number of Calories contained therein. Defendant does the same in all virtual marketing for the Product[1] and even the nutritional label affixed to each Product, whose image appears as a key advertising agent on each website, purposefully excludes a section for Calorie content, as seen below. This omission clearly implies to consumers that the Calories in the Product do not exist and thus do not appear on the label. In other words, this omission implies the Calorie content is an irrelevant nutritional factor. The same misleading marketing is true for product listings and reviews from websites who evaluate products based on such marketing information, like PricePulse[2] whose images are also found below for reference.

---

[1] See Nutrition - Product Page; Walmart - Product Page; Amazon - Product Page; The Vitamin Shoppe - Product Page
[2] See PricePulse - Product Page

7

**Description**

Animal Juiced Aminos is an anytime BCAA/EAA recovery and performance blend with added Amino Acids. It is perfect for pre-workout, post-workout, or any time during the day your muscles need extra recovery.6 Grams BCAA & EAA Matrix: Instant BCAA Blend (Leucine, Isoleucine, Valine), Lysine, Arginine, Methionine, Phenylalanine, Threonine, HistidineJuiced Amino Acid Performance Blend with AgmaPure, GlycoCarn, ArginoCarn, Sustamine: L-Taurine, Citrulline Malate, L-Glutamine, Agmatine Sulfate, Glycine Proprionyl L-Carnitine HCl, Acetyl-L-Carnitine Arginate Dichloride, L-Alanyl-L-Glutamine

**Features**

- Recover smarter and faster with 6 grams of BCAA's and EAA's in an instantized post workout recovery cocktail. Most BCAA Powders only give you a mix of BCAA's but Animal Juiced Aminos gives you BCAA's plus EAA's for maximum recovery.

- Improve hydration and endurance with patented ingredients and L-Glutamine, L-Taurine and Citrulline Malate. Juiced Aminos is so much more than a regular branched chain amino acid powder.

- Three delicious flavors that are instantized for easy mixability and mouth watering taste. You will be craving Juiced Aminos Pre-Workout, Post-Workout, and everywhere between.

- Caffeine-free formula is perfect for any time of the day or night and formulated for men and women who are looking to maximize their workout and recovery.

- Manufactured in cGMP facility to ensure the highest quality and freshness. We stand behind all of our products with a 100% guarantee.

**Animal Juiced Aminos - 6g BCAA/EAA Matrix plus 4g Amino Acid Blend for Recovery and Improved Performance - Orange - 30 Servings, 13.3 Ounce**

23.     Despite Defendant's omission of Calories on every Product's label, independent laboratory testing has revealed that the Product actually contains far more Calories than the "0"

implied by omission from the Product's packaging and from Defendant's advertising and promotional materials.

24.     Defendant's sale of the Product deceives consumers, such as Plaintiff, because the package is materially misleading in that it includes no Caloric information and, therefore, in a violation of FDA regulations, indicates the absence of any Calories per serving of its contents.

25.     Defendant's sale of the Product is deceptive to reasonable consumers, including Mr. Collins who, in consideration of their health and fitness goals, are in the market for 0 Calorie products, because there is no practical way for them to know, prior to purchase and consumption, that the Product is laden with Calories despite being marketed as a Calories-free, weight-loss, and dietary supplement.

26.     Under Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (c)(4), Plaintiff intends to seek certification of a Nationwide Class consisting of:

> **All persons who purchased the Product in the United States from within four years of the filing of this action through the present.**

27.     Plaintiff also intends to seek certification of a Pennsylvania Subclass consisting of:

> **All natural persons who purchased the Product in the state of Pennsylvania from within four years of the filing of this action through the present.**

28.     The Class is also referred to collectively herein as the "Proposed Class."

29.     Excluded from the Proposed Class are Defendant's officers, directors, legal representatives, successors, and assigns; any entity in which Defendant has a controlling interest; and judicial officers to whom this case is assigned and their immediate family members.

30.     Plaintiff reserves the ability to modify the definition of the Proposed Class before the Court determines whether class certification is warranted.

31.     *Numerosity*: The Proposed Class consists of tens of thousands of consumers who have purchased the Product, making joinder of each Proposed Class member impracticable. The Proposed Class is presently ascertainable by reference to records in the possession of Defendant.

32.     *Commonality and Predominance*: Common questions of law and fact exist for each of the causes of action and predominate over questions affecting only individual Proposed Class members. Questions common to the Proposed Class include:

A.     The nature, scope, and operation of Defendant's wrongful practices;

B.     The uniformity of the advertisements created through Defendant's marketing materials;

C.     Whether Defendant misrepresented and omitted the number of Calories in the Product;

D.     Whether Defendant engaged in fraudulent practices as to Plaintiff and Class members;

E.     Whether Defendant violated state consumer protection laws by misrepresenting and concealing the number of Calories in the Product;

F.     Whether Defendant's conduct amounts to violations of the CLRA;

G.     Whether Defendant deliberately misrepresented to, and omitted material facts from, Plaintiff and Class members;

H.     Whether members of the Class may be notified and warned about the contents of the Product and have the entry of final and injunctive relief compelling Defendant to stop their misrepresentations; and,

I.     Whether Plaintiff and the Class suffered damages because of Defendant's misconduct and, if so, the proper measure of damages.

33.     *Typicality*: Plaintiff's claims are typical of the claims of the members of the Proposed Class, as all such claims arise out of Defendant's conduct in designing, manufacturing,

marketing, advertising, warranting, and selling the Product. All of Plaintiff's claims are typical of the claims of the Proposed Class since Plaintiff and all Proposed Class members were injured in the same manner by Defendant's uniform course of conduct described herein.  Plaintiff and all Proposed Class members have the same claims against Defendant relating to the conduct alleged herein, and the same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Proposed Class members. Plaintiff and all Proposed Class members sustained economic injuries including, but not limited to, ascertainable losses arising out of Defendant's course of conduct as described herein. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Proposed Class members.

34.     *Adequacy*: Plaintiff will fairly and adequately protect the interests of the members of the Proposed Class and has no interests antagonistic to those of the Proposed Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, consumer class actions involving, *inter alia*, breaches of warranties, product liability, product design defects, and state consumer fraud statutes.

35.     *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Proposed Class is impracticable, and the amount at issue for each Proposed Class member would not justify the cost of litigating individual claims. Should individual Proposed Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer

management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

36.     *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

37.     Defendant has acted, and refused to act, on grounds generally applicable to the Proposed Class, thereby making appropriate final equitable relief with respect to the Proposed Class as a whole.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

38.     Defendant has possessed exclusive knowledge about the number of Calories contained in the Product, including from its customer complaint and warranty records, internal emails, reports, analyses, and assessment of engineers, all of which is unavailable to Plaintiff and the Proposed Class members.

39.     Throughout the time period relevant to this action, Defendant concealed the contents of the Product. As a result, neither Plaintiff nor the absent Class members could have discovered the number of Calories actually contained in the Product, even upon reasonable exercise of diligence.

40.     Despite their knowledge of the above, Defendant (a) failed to disclose, (b) concealed, and (c) continues to conceal critical information relating to the Product's Caloric content, even though, at any point in time, they could have communicated this material information to Plaintiff and the Class through individual correspondence, media releases, or other means.

41.     Plaintiff and Class members relied on Defendant to disclose the number of Calories in the Product because the contents could not be discovered through reasonable efforts by Plaintiff and Class members.

42.     Thus, the running of all applicable statutes of limitations has been suspended with respect to any claims that Plaintiff and Class members have against Defendant as a result of Defendant's misrepresentations and omissions, by virtue of the fraudulent concealment doctrine.

43.     Defendant was under a continuous duty to Plaintiff and Class members to disclose the true nature, quality, and character of its Product. However, Defendant concealed the true nature, quality, and character of the Product, as described herein. Based upon the foregoing, Defendant is estopped from relying on any statutes of limitations in defense of this action.

44.     Defendant knew about the number of Calories contained in the Product for years but concealed it and/or failed to alert purchasers or potential purchasers. Defendant maintained exclusive control over information concerning the number of Calories in the Product. Based upon the foregoing, Defendant is estopped from relying on any statutes of limitations or repose that might otherwise apply to the claims asserted by Plaintiff herein.

**FIRST CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**

45.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

46.     Plaintiff brings this claim on behalf of himself and on behalf of the Class.

47.     Defendant is a "merchant" and "seller" as those terms are defined under the Uniform Commercial Code ("U.C.C.") and by the respective state statutes (Title 13 of Pennsylvania Consolidated Statutes) under which Plaintiff alternatively pleads this claim.

48.     Plaintiff and Class members were "buyers" of "goods" as defined under the U.C.C. and by the respective state statutes[3] under which Plaintiff alternatively asserts this claim.

49.     "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." U.C.C. § 2-313(a)(1). 13 P.C.S. § 2313.

50.     Defendant created an express warranty within the meaning of the U.C.C. and the respective state statutes under which Plaintiff alternatively asserts this claim.

51.     Defendant extended express warranties that the Product contained "0 Calories" to consumers, including Plaintiff and the Proposed Class, by way of the product label, product descriptions and representations as to product qualities and characteristics, on its websites, and via advertisements, among other methods as detailed herein. These promises and representations became part of the basis of the bargain between the parties and thus constituted an express warranty.

52.     Plaintiff and Class members reasonably and justifiably relied on Defendant's express warranty when purchasing the Product.

53.     Defendant breached these warranties by selling the Product knowing it contained substantially more than the warranted "0 Calories" as set forth in detail herein.

54.     As a direct result of this breach, Plaintiff and other consumers in fact did not receive goods as warranted by Defendant.

55.     As a proximate result of this breach of warranty by Defendant, Plaintiff and other consumers have suffered damages, injury in fact, and ascertainable loss in the amount to be determined at trial.

---

[3] 13 P.C.S. § 2104

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

56.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

57.     Defendant sold the Product to Class members under implied warranties of merchantability and fitness. Defendant impliedly warranted the Product to be merchantable, fit for the ordinary purposes for which they were intended to be used (including the guarantee that they were in a safe and non-defective condition for use by their purchasers for the ordinary purpose for which they were intended and were not otherwise injurious). Defendant is under a duty to design, manufacture, label, and test the Product to make them suitable for the ordinary purposes of their use.

58.     Defendant breached its implied warranties for the Product by failing to disclose the true number of Calories contained in the Product and otherwise inadequately marketing the product as a dietary supplement that would not hinder weight loss and maintenance goals.

59.     In breach of Defendant's implied warranties, the Product is defective, unfit for the ordinary purposes for which it was intended to be used, and not merchantable.

60.     Defendant is, and was at all relevant times, a "merchant" and seller of nutritional supplements within the meaning of the U.C.C. and Title 13 of Pennsylvania's Consolidated Statutes.

61.     The Product is, and was at all relevant times, a "good" within the meaning of the U.C.C.

62.     A warranty that the Product was in merchantable condition and fit for the ordinary purpose for which such nutritional supplemental powders are used is implied by law under the U.C.C.

63.     Defendant knew, or had reason to know, of the specific use for which the Product would be purchased and used. Plaintiff and the Class were promised a dietary supplement that would not only contain "0 Calories" and be conducive to weight loss and management, but also that would be adequately labeled, pass without objection in the trade, and be fit for the ordinary purposes for which dietary supplement powders are used.

64.     Defendant knew that the Product would and did pass unchanged from the authorized manufacturers to Plaintiff and members of the Class, with no indication of the true Caloric content of the Product.

65.     Defendant provided Plaintiff and Class members with an implied warranty that the Product was merchantable and fit for the ordinary purposes for which they were sold.

66.     This implied warranty included, among other things, a warranty that Defendant manufactured, supplied, distributed, and/or sold the Product with consumers in mind who would be seeking Calorie-free products for reasons of weight, health, and fitness management.

67.     Contrary to the applicable implied warranties, the Product at the time of sale and thereafter was not fit for its ordinary and intended purpose in that it, in fact, contained far more than the "0 Calories" Defendant represented to consumers through its omissions. Such action breached the implied warranty that the Product was of merchantable quality and fit for such use, in violation of the U.C.C. and relevant state law.

68.     Defendant has been on notice of these misrepresentations and/or omissions through, upon information and belief, its own internal research and development process.

Defendant has had the opportunity to correct the number of Calories in the Product or correct its misrepresentations but have chosen not to do so. When confronted with the allegations herein, Defendant elected to continue to sell its Product without disclosing its omissions.

69.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability and fitness for a particular purpose, Plaintiff and Class members did not receive the benefit of their bargains.

70.     Plaintiff and Class members are entitled to damages and other legal and equitable relief, including the purchase price of the Product, overpayment, or loss of the benefit of the bargain.

### THIRD CAUSE OF ACTION
### COMMON LAW FRAUD

71.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

72.     Plaintiff asserts this claim on behalf of the Class.

73.     Defendant committed fraud by (i) failing to disclose and (ii) actively concealing, at the point of sale of the Product to Plaintiff and otherwise, that the Product contains more than "0 Calories." Through its own website and other marketing materials, Defendant concealed the truth about the Product, intending for Plaintiff and the Class to rely upon Defendant's representations and/or omissions—which they did.

74.     A reasonable consumer would not have expected the Product to contain the Caloric content described herein. Plaintiff and the members of the Class did not know of the facts which were concealed from them by Defendant. Moreover, as consumers, Plaintiff and the members of the Class did not, and could not, unravel the deception on their own. Defendant omitted information about the Calorie content on its websites and marketing materials.

75.     Defendant had a duty to disclose Caloric information because the true facts were known and/or accessible only to them and because it knew these facts were not known or reasonably discoverable by Plaintiff or the members of the Class.

76.     As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Class have been harmed in that they purchased the Product when they otherwise would not have, paid more for the Product than they otherwise would have, and are left with a Product of diminished value and utility because of the defect. Meanwhile, Defendant has sold more of the Product than it otherwise would have and charged inflated prices for the Product, thereby unjustly enriching itself.

77.     Based on the foregoing, Plaintiff is entitled to all remedies available, including refunds, actual damages, liquidated damages, punitive damages, attorney fees, and other reasonable costs. Plaintiff and Class members request that the Court award equitable relief, including an order requiring Defendant to adequately disclose Calorie content of the Product and an order enjoining Defendant from selling the Product without disclosing this information in the future.

78.     Defendant's acts and omissions were done wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiff and the Class; and to enrich itself. Defendant's misconduct warrants an assessment of punitive damages in an amount sufficient to punish them and deter such conduct in the future, which amount shall be determined according to proof at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION LAW, (as to sub-class)**
**73 P.S. §§ 201-1-201-9.2**

79.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

80.     Plaintiff brings this cause of action on behalf of the Class.

81.     Mr. Collins and the prospective class purchased products from Universal Nutrition for personal, family, and/or household purposes.

82.     Mr. Collins and the prospective class sustained an ascertainable loss of money.

83.     The loss occurred as a result of Universal Nutrition's use of unlawful practices, under the UTPCPL.

84.     Specifically, beginning—at an exact date unknown to Plaintiff, but within three (3) years preceding the filing of the Class Action Complaint—Defendant, in the course of business, represented that its goods were of a particular quality, advertised goods with the intent not to sell the goods as advertised, and failed to comply with the terms of its written guarantee and warranty given to its buyers, including Mr. Collins and the respective class.

85.     Defendant made representations and statements (by omission and commission) that led reasonable consumers to believe that the Product was fit for their intended purpose, to aid in muscle development, maintenance, and repair without adding excessive Caloric intake. Defendant deceptively failed to inform Plaintiff and Class members that the Product was, in fact, laden with Calories far greater than the Calorie-free product represented by Defendant.

86.     Plaintiff and those similarly situated relied, to their detriment, on Defendant's false, misleading, and deceptive advertising and marketing practices. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant through

Defendant's false representations and omissions, they would have acted differently by, without limitation, refraining from purchasing the Product or paying less for it.

87.     As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive, and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiff and those similarly situated paid a price premium for the Product, *i.e.*, the difference between the price they paid for the Product and the price they would have paid but for Defendant's misrepresentations and omissions.

88.     Plaintiff seeks, on behalf of himself and those similarly situated, restitution of the difference between what Defendant acquired from Plaintiff, the general public, and/or the Class, and what would have been acquired in absence of the false, misleading, and deceptive advertising and marketing practices complained of herein, which amount will be proven at trial, plus interest thereon.

89.     Plaintiff seeks, on behalf of himself and those similarly situated, a declaration that the above-described practices constitute false, misleading, and deceptive advertising.

90.     Defendant, unless and until enjoined and restrained by this Court, will continue to cause injury in fact to the general public in the loss of money and property and Defendant will continue to violate the laws of Pennsylvania, unless specifically ordered to comply with the same.

**FIFTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**

91.     Plaintiff, individually and for the nationwide Class and the Pennsylvania Sub-Class, hereby incorporates each and every allegation as though fully set forth herein.

92.     This claim is asserted in the alternative on behalf of Plaintiff and the members of the Classes to the extent that there is any determination that Plaintiff does not have standing to assert any contractual claims asserted against Universal Nutrition on the alleged basis of an absence of contractual privity or otherwise.

93.     By its wrongful acts and omissions described herein, including selling the Products without important caloric information, Universal Nutrition was unjustly enriched at the expense of Plaintiff and the Classes.

94.     Plaintiff and the Class members conferred a benefit upon Universal Nutrition by purchasing the Products at the full price. Under the circumstances, it would be inequitable for Universal Nutrition to retain the profits, benefits, and other compensation obtained through its wrongful conduct in manufacturing, marketing, and selling the Products with the materially misleading omission of caloric information to Plaintiff and the Class Members.

95.     Plaintiff and Class Members are entitled to damages in the amount Defendant was unjustly enriched; an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE UNFAIR AND UNLAWFUL PRONGS OF UNFAIR AND**
<u>**DECEPTIVE TRADE PRACTICES STATUTES**</u>

96.     Plaintiff, individually and for the Nationwide Class, hereby incorporates each and every allegation as though fully set forth herein.

97.     Plaintiffs and Class Members who purchased the Products are "consumers" under their states' unfair and deceptive practices statutes, which are identified with specificity for this count in Appendix A.

98.     The Products that Plaintiff and Class Members purchased are "goods" within the meaning of these states' unfair and deceptive practices statutes.

99.     Universal Nutrition has engaged, and continues to engage, in unfair, unlawful, and deceptive trade practices in the State of Pennsylvania and other states by engaging in the unfair, unlawful, and deceptive business practices outlined herein. Universal Nutrition participated in a marketing campaign that deceived consumers. In particular, Defendant has knowingly and willfully engaged, and continues to engage, in unfair, unlawful, and deceptive trade practices in that:

      a.     At the time of sale, Defendant knowingly and intentionally misrepresented and omitted the number of calories in the Product;

      b.     Thereafter, Defendant failed to disclose its misrepresentations to Plaintiff and the Class Members, either through warnings or recall notices, and/or actively concealed from them that the Products contained more than no calories, even though the company knew of such contents at the time of manufacture and when it created the recipe for the Product; and,

      c.     Based on these and, upon information and belief, other internal studies and investigations, Defendant knew with certainty that it was misrepresenting the contents of the Products.

100.    Universal Nutrition's unfair acts and practices led consumers to falsely believe that the Products contained no calories.

101.    Defendant's acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers.

102.    Defendant's acts and omissions are also unfair in that they caused injury to consumers far more than any conceivable benefit and are injuries of a nature that they could not have been reasonably avoided by consumers.

103.    Until the present, Defendant has knowingly accepted the benefits of its unfair and unlawful conduct in the form of profits from the sale of the Products.

104.    As a result of the unfair and unlawful acts described herein, Plaintiff and Class Members of the Nationwide Class purchased and used the Products when they would not otherwise have done so and suffered economic losses consisting of the cost of purchase of the Products.

105.    Plaintiff and Class Members relied to their detriment on Defendant's unfair, unlawful, and deceptive business practices. Had Plaintiff and Class Members been adequately informed rather than intentionally deceived by Defendant, each would have acted differently by, without limitation, not purchasing the Products.

## **PRAYER FOR RELIEF**

A.      For an order certifying the proposed Classes and appointing Plaintiff and Plaintiff's counsel to represent the Classes;

B.      For an order awarding Plaintiff and Class Members actual, statutory, punitive, and/or any other form of damages provided by and pursuant to the statutes cited above;

C.      For an order awarding Plaintiff and the Class Members restitution, disgorgement. and/or other equitable relief provided by and pursuant to the statutes cited above or as the Court deems proper;

D.      For an order or orders requiring Universal Nutrition to adequately disclose the number of calories in the Product and enjoining Universal Nutrition from misleadingly omitting calories from such Product's labels or inaccurately reporting the number of calories on such Product's labels.

E.    For an order awarding Plaintiff and the Class Members pre-judgment and post-judgment interest;

F.    For an order awarding Plaintiff and Class Members reasonable attorney fees and costs of suit, including expert witness fees; and,

G.    For an order awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff and Classes hereby respectfully demand trial by jury of all issues triable by right.

Dated: June 30, 2022                              Respectfully submitted,


                                                  _/s/ D. Aaron Rihn_____
                                                  D. Aaron Rihn, Esquire
                                                  Sara J. Watkins, Esquire
                                                  Robert Peirce & Associates, P.C.
                                                  707 Grant Street, Suite 125
                                                  Pittsburgh, PA 15219
                                                  Tel. (412) 281-7229
                                                  arihn@peircelaw.com
                                                  swatkins@peircelaw.com

                                                  Nicholas A. Migliaccio, Esquire *
                                                  Jason S. Rathod, Esquire*
                                                  412 H Street NE, Suite 302
                                                  Washington, DC 20002
                                                  Tel. (202) 470-3520
                                                  nmigliaccio@classlawdc.com
                                                  jrathod@classlawdc.com

                                                  Robert Mackey, Esquire
                                                  Law Offices of Robert Mackey
                                                  P.O. Box 279
                                                  Sewickley, PA 15143
                                                  Tel. (412) 370-9110
                                                  bobmackeyesq@aol.com

*Attorneys for Plaintiff and Putative Class*

\* pro hac vice admission anticipated

**Appendix 1.**



(vii) Dietary supplement of amino acids

## Supplement Facts

Serving Size 1 Tablet
Servings Per Container 50

| Amount Per Tablet | |
| --- | --- |
| Calories | 15 |
| Isoleucine (as L-isoleucine hydrochloride) | 450 mg* |
| Leucine (as L-leucine hydrochloride) | 620 mg* |
| Lysine (as L-lysine hydrochloride) | 500 mg* |
| Methionine (as L-methionine hydrochloride) | 350 mg* |
| Cystine (as L-cystine hydrochloride) | 200 mg* |
| Phenylalanine (as L-phenylalanine hydrochloride) | 220 mg* |
| Tyrosine (as L-tyrosine hydrochloride) | 900 mg* |
| Threonine (as L-threonine hydrochloride) | 300 mg* |
| Valine (as L-valine hydrochloride) | 650 mg* |

* Daily Value not established.

Other ingredients: Cellulose, lactose, and magnesium stearate.

Highlighted Supplement Facts displays 4.19g of AAs yielding 16.7 Calories, which in turn has been rounded to 5s when less than 50. Thus, the Calorie declaration is compliant at 15. https://www.fda.gov/media/99158/download.